THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TALEN ENERGY MARKETING, LLC : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| v. : | NO. 19-4303 |
| : | |
| ALUMINUM SHAPES, LLC, : | |
| : | |
| Defendant. : | |

**Henry S. Perkin, M.J.**                                                                                   **August 28, 2020**

## MEMORANDUM

Presently before the Court is Plaintiff Talen Energy Marketing, LLC's Motion for Summary Judgment (ECF No. 34) filed July 22, 2020.[1] For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**I.     FACTUAL AND PROCEDURAL HISTORY**

On September 18, 2018, Plaintiff Talen Energy Marketing, LLC ("Talen") filed this breach of contract action against Defendant Aluminum Shapes, LLC ("Shapes") based upon a written agreement titled "Retail Electricity Agreement" (the "Agreement"). (ECF No. 1.) Plaintiff Talen, headquartered in Allentown, Pennsylvania, is an independent energy producer and marketer that supplies electricity to retail customers. (ECF No. 34-6 ¶ 2.) Defendant Shapes is a fully integrated aluminum manufacturer located in Delair, New Jersey. (ECF No. 28 ¶ 4, ECF No. 30 ¶ 4.)

Talen and Shapes executed the Agreement on October 26, 2017 whereby Talen was to provide electricity to Shapes' service address beginning January 2018 for a period of twelve months.  (ECF No. 34-5, Ex. A.)  James Cackowski, Purchasing Manager, signed on behalf of Shapes and Brian Brower, Director of Retail Energy, signed on behalf of Talen. *Id.* Consistent with the Agreement, Talen invoiced Shapes monthly for its electrical consumption for

---

[1] Defendant did not file a response to the motion for summary judgment.

1

the preceding month. *Id.* Shapes does not dispute that it received the invoices and maintained an internal accounts payable sub-ledger consistent with the invoicing. (ECF No. 34-5, Exs. C, G.) Further, from 2018 through February 2019, Shapes did not dispute or challenge any of the invoices it received from Talen as inaccurate. (ECF No. 34-5, Ex. C.)

Though Shapes made some payments, Talen alleges that Shapes breached the Agreement by failing to make payment in full. (ECF No. 34-5, Ex. F.) Talen claims that, prior to instituting this suit, it made numerous requests and demands for payment including an August 27, 2019 letter from Talen's Deputy General Counsel to James Cackowski. (ECF No. 34-6 ¶ 13.) As a direct result of Shapes' breach, Talen maintains that it has incurred damages totaling $1,421,101.18, which consists of the principal amount of $1,066,719.02 plus interest in accordance with the terms of the subject contract, through July 31, 2020.[2] Shapes does not contend that Talen breached the agreement or otherwise failed to perform its obligations under the Agreement. (ECF No. 34-5, Ex. C.) Moreover, the former Chief Financial Officer, Lisa Johnson, testified during her deposition that she "reminded [Chief Executive Officer, Solomon Rosenthal] that [Shapes] was required to pay the bill since [Shapes] had received the electricity" but was told by Mr. Rosenthal "not to pay [Talen]." (Johnson Dep. 29:6-13.) Mr. Rosenthal further acknowledges that Shapes owes Talen money pursuant to the agreement. (Rosenthal Dep. 21:19-22:2.)

Talen filed the underlying lawsuit on September 18, 2018, asserting a claim for breach of contract and, in the alternative, a claim for quantum meruit. On March 4, 2020, Talen amended its complaint, modifying its damages to include recovery of collection costs. (ECF Nos. 20, 28.) Shapes' filed its Answer to the Amended Complaint on March 18, 2020, largely denying Talen's allegations and stating that the damages Talen seeks are not in accordance with the parties' Agreement. (ECF No. 30.) Talen now moves this Court for summary judgment in its favor as to its claim for breach of contract. The motion for summary judgment is now ripe for disposition.

II.     **LEGAL STANDARD**

---

[2] Talen also contends that its damages include "accruing per diem interest of $526.95, together with attorney's fees and costs to be determined by post judgment submission." (ECF No. 34-1, at 6.)

2

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather, that party must cite "to particular parts of materials in the record" showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex*, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish prima facie each element of its claim. *Celotex*, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. *Id.* at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." *Jones v. Indiana Area Sch. Dist.*, 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting *Celotex*, 477 U.S. at 325).

III. **DISCUSSION**

Parties to a contract can move to enforce the contract when there is a breach by another party. *City of Allentown v. Lehigh Cty. Auth.*, 222 A.3d 1152, 1157 (PA. Super. 2019)(citing *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659-661 (Pa.

3

2009)). To sustain a breach of contract claim under Pennsylvania law, a plaintiff must prove: (1) the existence of a contract, including its essential terms (2) a breach of duty imposed by the contract, and (3) resultant damages. *J.F. Walker Co., Inc. v. Excalibur Oil Grp.*, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002); *see also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). "Resultant damages" are those damages suffered from the breach. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).[3]  Because this Court finds that no genuine issue of material fact exists as to whether the Agreement existed, Shapes breached its duty to pay for the electric power as required by the Agreement, and Talen suffered damages as a result of this breach, we find that Talen is entitled to judgment as a matter of law.

      a. **Existence of the Contract**

As noted above, the existence of the contract and its essential terms are undisputed.  On October 26, 2017, both parties, through their representatives, entered into and executed the Agreement whereby Talen, the seller, was to provide electricity to Shapes, the buyer, in exchange for payment of the contract price. (ECF No. 34-5, Ex. A.) In accordance with the Agreement, Talen invoiced Shapes monthly for electricity delivered in the preceding month and Shapes consented to paying the amount of each invoice "either in accordance with the EDC's[4] payment terms or on or before the twentieth day after the applicable Invoice date." *Id.* All invoices were "conclusively presumed final and accurate unless objected to in writing… within six months after the date of the applicable invoice or billing." *Id.* Further, Section 5 of the Agreement, titled Payment Terms, provides that if Shapes did not pay the invoices by the applicable due date, it would be responsible for "interest on any overdue amounts at the lesser rate of 1.5% per month or the highest rate permitted by law until paid in full" and "any and all costs of collection (including reasonable attorney's fees) that the owed party may incur in connection with this Agreement." *Id.*

---

[3] Per the Agreement, Talen and Shapes agreed that "all matters arising under or related to [the Agreement] shall be governed by the laws of the Commonwealth of Pennsylvania." (ECF No. 34-5, Ex. A.)

[4] "EDC" means the electric distribution company that provides the electric lines, both above ground and below ground, that deliver the electricity to Shapes facility. The contract indicates that Public Service Enterprise Group ("PSEG") was the electric distribution company for Shapes. (ECF No. 34-5, Ex. A.)

4

In its answers to Plaintiff's Requests for Admissions, Shapes admitted to the Agreement between the parties.[5] (ECF No. 34-5, Ex. B.) James Cackowski, Shapes' Purchasing Manager, acknowledged that he negotiated the Agreement with Talen and that it was within "the purview of [his] responsibilities and powers on behalf of Aluminum Shapes" to enter into the Agreement. (Cackowski Dep. 12:12-13:3.) Lisa Johnson, former Chief Financial Officer, also recognized that, when she joined Shapes in June 2018, the Agreement was in place and Talen was supplying electricity to Shapes. (Johnson Dep. 16:17-20; 26:2-13.) Lastly, Solomon Rosenthal, Chief Executive Officer, admitted that Shapes entered into an agreement with Talen for the supply of electricity in 2018. (Rosenthal Dep. 13:15-25.) Thus, this Court finds that there is no genuine dispute as to the existence of the Agreement, and its essential terms, between Talen and Shapes.

### b. **Breach of Duty**

Pursuant to the Agreement, Shapes was required to pay the contract price in accordance with the payment terms. The payment terms essentially dictate that Talen would invoice Shapes monthly for the amount of electricity consumed in the preceding month and Shapes would pay the amount of each invoice by the due date.[6] (ECF No. 34-5, Ex. A.) Shapes also agreed that, if it failed to pay the invoice when due, it would pay an interest in accordance with the terms of the subject contract on any overdue amounts in addition to costs of collection. *Id.*

Shapes acknowledged its obligation to pay the invoices by executing the agreement on October 26, 2017. *Id.* Further, Shapes did not dispute that it received the invoices nor did it challenge the accuracy of the invoices. (ECF No. 34-5, Ex. C.) Evidence of past payments and an accounts payable sub-ledger summarizing the invoice amounts, due dates, and aging of the invoices also demonstrate that Shapes was well aware of its responsibility to pay the invoices as prescribed the by terms of the Agreement. (ECF Nos. 34-5, Ex. F, G.)

---

[5] Specifically, Shapes admitted that the that first exhibit attached to Plaintiff's Amended Complaint represented a true and correct copy of the Agreement between the parties. (ECF No. 34-5, Ex. B.)

[6] As discussed above, the payment of the invoice was due "either in accordance with the EDC's payment terms or on or before the twentieth day after the applicable Invoice date." (ECF No. 34-5, Ex. A) Each invoice included a due date for payment of the total outstanding amount. (ECF No. 34-5, Ex. F.)

Despite its knowledge and acceptance of this obligation, Shapes failed to pay the invoices when due, thus breaching its duty imposed by the contract. As previously noted, Lisa Johnson testified during her deposition that she reminded Solomon Rosenthal that Shapes was "required to pay the bill since [Shapes] had received the electricity, and he told [her] not to pay them." (Johnson Dep. 29:11-13.) According to Ms. Johnson, Mr. Rosenthal's reason for failing to pay the invoices in full was that "[Talen] no longer had leverage on [Shapes] since [Shapes] no longer [received] the electricity directly from Talen." (*Id.* 29:14-20.) Ms. Johnson further indicated her belief that Shapes did not pay Talen for the electricity consumed in 2018 because "[t]he financial status of the company was poor." (*Id.* 37:9-15.) Similarly, Mr. Rosenthal testified that he was aware that Shapes "had been behind on payments" and does not dispute that Shapes currently owes money to Talen for energy supplied to them. (Rosenthal Dep. 14:9-19, 21:19-22:2.) Mr. Rosenthal explained that Talen's invoices were not paid because of "cash flow" concerns. (*Id.* 18:21-19:16, 22:25-23:3.) In his discussions with Ms. Johnson regarding the unpaid invoices, Mr. Rosenthal testified that because Talen was "not providing [Shapes] energy right now" he had to "make a decision between covering payroll for [his employees] or trying to pay somebody who is demanding in full payment for something that they're no longer providing [Shapes]" and instructed her to "table [the issue] for now." (*Id.* 18:7-19:16.) For these reasons, the Court finds that there is no genuine issue of material fact as to whether Shapes breached its duty to pay Talen the amount indicated in each monthly invoice by their respective due dates.

    c.  **<u>Damages</u>**

Lastly, this Court finds that it is undisputed that Talen suffered damages directly resulting from Shapes' breach of duty. Talen provided electricity monthly to Shapes, however Shapes did not fully compensate Talen for the electricity it received. As a result, both parties acknowledge that Shapes owes Talen a principal amount of $1,066,719.02. Shapes' accounts payable sub-ledger indicates a balance due of $1,066,719.02 to Talen, consistent with Talen's monthly invoices. (ECF No. 34-5, Exs. F, G.)

While the outstanding principal is a definite, ascertainable sum recognized by both parties, it is evident from the Agreement that the parties agreed to the additional payment of interest in accordance with the terms of the subject contract and costs of collection should Shapes fail to pay an invoice when due. As noted above, Section 5 of the Agreement provides

that, if Shapes did not pay the invoices by the applicable due date, it would be responsible for "interest on any overdue amounts at the lesser rate of 1.5% per month or the highest rate permitted by law until paid in full" and "any and all costs of collection (including reasonable attorney's fees) that the owed party may incur in connection with this Agreement." (ECF No. 34-5, Ex. A.) Doug Bathauer, Chief Operating Officer and corporate designee testified in his deposition that he was aware that the contract "calls for the lesser of 1.5 percent monthly or amount allowable by law." (Bathauer Dep. 6:4-23.) Accordingly, we find that Talen is entitled to a judgment that shall encompass the principal of $1,066,719.02 as well as interest in accordance with the terms of the subject contract and collection costs (including attorney's fees). The amount of interest assessed in accordance with the terms of the subject contract and collection costs shall be determined by post-judgment order.

IV.     **CONCLUSION**

Based on the foregoing reasons, this Court finds that no genuine issue of material fact exists as to whether the Agreement existed, Shapes breached its duty to pay for the electric power as required by the Agreement, and Talen suffered damages as a result of this breach. Because Talen has conclusively established each element of a breach of contract claim under Pennsylvania law, Talen is entitled to judgment as a matter of law.  Accordingly, Plaintiff Talen's Motion for Summary Judgment is **GRANTED.** The judgment shall include the principal of $1,066,719.02 as well as interest in accordance with the terms of the subject contract and collection costs (including attorney's fees) to be determined by post-judgment order.