THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TALEN ENERGY MARKETING, LLC<br><br>               Plaintiff,<br>v.<br><br>ALUMINUM SHAPES, LLC,<br><br>               Defendant. | CIVIL ACTION<br><br>NO. 19-4303 |

**Henry S. Perkin, M.J.**                                                               **February 12, 2021**

## MEMORANDUM

Presently before the Court are Plaintiff Talen Energy Marketing, LLC's Motion to Mold Judgment to Include Attorney's Fees and Expenses, Pre-Judgment Interest, and Post-Judgment Interest (ECF No. 39); Plaintiff's Brief in Support of its Motion (ECF No. 39-2); and Defendant Aluminum Shapes, LLC's Response to Plaintiff's Motion to Mold Judgment (ECF No. 40.) For the reasons set forth below, the Motion **GRANTED**, in part, and **DENIED**, in part, as described below.

### I. FACTUAL AND PROCEDURAL HISTORY

This Court previously set out a detailed account of the factual and procedural history of this case in its memorandum on Plaintiff's motion for summary judgment. (ECF No. 37.) Therefore, we only address those facts relevant to the motion now before this Court.

On October 26, 2017, Plaintiff Talen Energy Marketing, LLC ("Talen") and Defendant Aluminum Shapes, LLC ("Shapes") executed a Retail Electricity Agreement (the "Agreement") whereby Talen was to provide electricity to Shapes' service address beginning January 2018 for a period of twelve months. (ECF No. 34-5, Ex. A.) Consistent with the Agreement, Talen invoiced Shapes monthly for its electrical consumption for the preceding month. *Id.* Though Shapes made some payments, it failed to make payment in full, despite numerous requests and demands from Talen for payment. (ECF No. 34-5, Ex. F; ECF No. 34-6 ¶ 13.)

As a result of Shapes' failure to pay, on September 18, 2018, Talen filed the underlying lawsuit against Shapes, LLC, asserting a claim for breach of contract and, in the alternative, a claim for quantum meruit. (ECF No. 1.) Talen moved for summary judgment on its claim for breach of contract and, on August 28, 2020, this Court granted Talen's motion. (ECF No. 38.) In granting the motion, we noted that the terms of the Agreement include interest and costs of collection (including reasonable attorney's fees) should Shapes fail to pay an invoice when due. Specifically, Section 5 of the Agreement, titled Payment Terms, provides that if Shapes did not pay the invoices by the applicable due date, it would be responsible for "interest on any overdue amounts at the lesser rate of 1.5% per month or the highest rate permitted by law until paid in full" and "any and all costs of collection (including reasonable attorney's fees) that the owed party may incur in connection with this Agreement." (ECF No. 34-5, Ex. A.)

Therefore, this Court noted in its August 28th order that the judgment was to encompass "the principal of $1,066,719.02 as well as interest in accordance with the terms of the subject contract, collection costs, and attorney's fees." *Id.* The Court further directed Talen to submit a post-judgment motion for assessment of interest in accordance with the terms of the contract, collection costs, and attorney's fees. *Id.* Having reviewed and considered the parties' briefs, the court is prepared to rule on this motion.

**II.  DISCUSSION**

In its Motion to Mold the Judgment, Talen requests an award of: attorney's fees in the amount of $28,799.50 (as of September 30, 2020), expenses in the amount of $1,740.40 (as of September 30, 2020); attorney's fees of $3,000 for preparation of this motion; pre-judgment interest in the amount of $386,471.41 (as of September 30, 2020); and post-judgment interest set at a rate of 1.5% per month until Shapes satisfies the judgment. (ECF No. 39.) Shapes contests only the post-judgment interest rate, arguing that the statutorily prescribed federal interest rate applies to this case, not the rate of 1.5% indicated in the contract. (ECF No. 40.) For the reasons that follow, this Court finds that, in accordance with the terms of the contract, Talen is awarded collection costs (attorney's fees and expenses), pre-judgment interest, and post-judgment interest at the statutorily prescribed federal interest rate.

### a. Collection Costs

#### i. Attorney's Fees

Under Pennsylvania law, attorney's fees "are recoverable from an adverse party to a cause only when provided for by statute, or when clearly agreed to by the parties." *Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 186 (3d Cir. 2011)(citing *Fidelity–Phila. Trust Co. v. Phila. Transp. Co.*, 173 A.2d 109, 113 (1961).[1] As previously noted, the Agreement explicitly states that if Shapes did not pay the invoice by the applicable due date, it shall be liable for costs of collection (including reasonable attorney's fees) that Talen may incur in connection with the Agreement. Thus, the parties were sufficiently clear that attorney's fees were within the scope of the contract.

Where reasonable attorney's fees are stipulated to in a contract, the court must review the requested fee for reasonableness. *Wells Fargo Fin. Leasing, Inc. v. Target Ad, Inc.*, 2010 WL 1141332, at *2 (E.D. Pa. Mar. 24, 2010). "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 422 (1983)); *see also E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 657 F. Supp. 2d 545, 562 (E.D. Pa. 2009) ("In order to award attorney's fees… a court must review records of the basis for such fees, including . . . (1) the full name of each attorney who worked on each discrete task ...; (2) the qualifications and experience of each of those attorneys; and (3) an explanation of how the hourly rates used in the ... calculations were chosen.")(internal quotation marks omitted). The court must also consider the "amount and character of the services performed, the difficulty of the problems involved, and the amount of money or value of the property in question." *Toshiba Am. Med. Sys., Inc. v. Valley Open MRI and Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (citing *McMullen v. Katz*, 985 A.2d 769, 774 (Pa. 2009)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Under this approach, known as the loadstar method, a district court

---

[1] Per the Agreement, Talen and Shapes agreed that "all matters arising under or related to [the Agreement] shall be governed by the laws of the Commonwealth of Pennsylvania." (ECF No. 34-5, Ex. A.)

should exclude hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434. Attached as Exhibit C to its Motion to Mold the Judgment, Talen's counsel has provided monthly invoices for services rendered from August 2019 through and including August 2020. These invoices detail the date of the task performed, the name of the attorney or paralegal performing it, a brief description of the task or service, and the time spent performing the task to the tenth of an hour. After reviewing these billing records, this Court finds that they reflect a reasonable number of hours expended for work that was necessary to resolve this contractual dispute. As Talen notes in its brief, its counsel worked 115.50 hours in total on this matter from August 2019 through and including August 2020.

Having established the number of hours reasonable expended, we must examine whether the requested hourly rate is reasonable. "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Accordingly, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Student Pub. Interest Research Grp. v. AT & T Bell Labs.*, 842 F.2d 1436, 1447 (3d Cir.1988); *Blum*, 465 U.S. at 895 n. 11).

In support of the requested rates, Joseph S. D'Amico, lead counsel for Talen, prepared a certification confirming that the rates are reasonable. (ECF No. 39, Ex. D.) The certification lists the full names of each attorney that worked on the matter, the relevant legal experience of those attorneys, and the applicable rates charged.[2] Further, the certification indicates the rates charged for the two paralegals who worked on the matter, $120-130 per hour, were determined based on the standard national rate. *Id.* Lastly, in Talen's brief, it cites to a case before the Lehigh County Court of Common Pleas in which the court expressed that $350 was a reasonable hourly rate for a well-trained Lehigh County attorney utilizing a mixed billing rate for calculating the lodestar. *Cedar-Trexler, LLC v. Electrofit, LLC*, 2019 WL 1975395, at *5 (Pa. Com. Pl. Civil Div. Mar. 26, 2019). In light of Mr. D'Amico's certification, along with the cited caselaw, this Court finds that Talen has sufficiently established that its requested hourly rates are reasonable in light of the

---

[2] The rates charged per hour are as follows: Douglas Smillie (shareholder), $325 per hour; Joseph S. D'Amico (shareholder), $300 per hour; Juan P. Camacho, $190 per hour (associate); Christopher Kalbfell (associate), $160 per hour.

prevailing rates in the Lehigh County for similar services by lawyers of reasonably comparable skill, experience, and reputation.

After concluding that the rates charged by Talen's counsel are reasonable, we must multiply those rates by the reasonable hours expended to obtain the lodestar. *Rode*, 892 F.2d at 1183. The lodestar is presumed to be the reasonable fee. *Id.* (citing *Blum*, 465 U.S. at 897). As noted above, Talen's counsel expended 115.50 hours overall on this matter as of August 31, 2020, totaling $28,799.50 in fees.  The breakdown of these hours and fees, per attorney and paralegal, is as follows:

- Joseph S. D'Amico: 73.5 hours x $300 = $22,050.00
- Douglas Smillie: 0.7 hours x $325 = $227.50
- Juan P. Camacho: 8.6 hours x $190 = $1,634.00
- Christopher Kalbfell: 24 hours x $160 = $3,840.00
- Stacie R. Heinen: 0.4 hours x $130 = $52.00
- Heather M. Rivera: 8.3 hours x $120 - $996.00

Given the successful results obtained by Talen's counsel in this breach of contract dispute, this Court finds that the lodestar calculated for attorney's fees as of September 30, 2020 is reasonable.

Talen also requests attorney's fees of $3,000 for preparation of this motion. The Court finds that this request is reasonable given the estimated amount of time lead counsel, Joseph D'Amico, spent on this motion, 10 hours in total, along with his hourly rate, $300 per hour. Reviewing the time spent on the motion for summary judgment, we find that this time estimate is comparable and the requested attorney's fees are thus reasonable.  Accordingly, Talen is awarded $31,799.50 in attorney's fees.

    ii. <u>Expenses</u>

Talen also requests that this court award $1740.40 of expenses incurred in the instant lawsuit.  Similar to attorney's fees, expenses related to the litigation are recoverable only when provided for by statute, or when clearly agreed to by the parties. Absent a statutory or contractual basis, a plaintiff cannot seek attorney's fees, costs, and expenses. *Tippett v. Ameriprise Ins. Co.*,

2015 WL 1345442, at *6 (E.D. Pa. Mar. 25, 2015) (citing *Scalia v. Erie Ins. Exchange*, 878 A.2d 114, 116–17 (Pa.2005); *Lucchino v. Commonwealth*, 570 Pa. 277, 809 A.2d 264, 282 (Pa.2002)).

Looking again to Section 5 of the Agreement, it is evident that the parties intended to allow Talen to recover costs associated with this litigation. As previously discussed, Section 5 provides that if Shapes did not pay the invoice by the applicable due date, it shall "be liable for *any and all costs of collection* (including reasonable attorney's fees) that the owed party may incur in connection with this Agreement." (ECF No. 34-5, Ex. A)(emphasis added). Shapes does not contest the recoverability of these expenses or the amount Talen seeks.

Talen supports its request for $1,740.40 of expenses through its monthly invoices. (ECF No. 39, Ex. C.) These records list each expense with the date incurred, brief description, and amount of the expense. *Id.* The certification of Mr. D'Amico also offers a summary of the expenses which include: $533.90 in witness fees; $569.50 in deposition transcript costs, $631.00 in court/service fees, and $6.00 in travel expenses. (ECF No. 39, Ex. D.) Reviewing the evidence Talen has presented to the Court, we find that these expenses are reasonable considering the work completed in order to bring this matter to a resolution. Accordingly, Talen shall be awarded $1,740.40 in expenses.

### b. Pre-Judgment Interest

In diversity cases, such as this one, pre-judgment interest is governed by state law. *See Yohannon v. Keene Corp.*, 924 F.2d 1255, 1265 (3d Cir. 1991) (citing *Jarvis v. Johnson*, 668 F.2d 740, 746-47 (3d Cir. 1982)). "Under Pennsylvania law, the award of prejudgment interest in a contract action is not discretionary; it is a legal right to which a prevailing party is entitled." *ECEM European Chem. Mktg. B.V. v. Purolite Co.*, 451 F. App'x 73, 79 (3d Cir. 2011)(citing *Fernandez v. Levin*, 519 Pa. 375, 548 A.2d 1191, 1193 (1988)). Pre-judgment interest in Pennsylvania contract cases is calculated from the time the money becomes due or payable. *Am. Enka Co. v. Wicaco Mach. Corp.*, 686 F.2d 1050, 1056 (3d Cir. 1982). Unless otherwise specified by the parties, the rate of prejudgment interest is calculated as simple interest at a rate of 6% per year. *Russo v. Abington Memorial Hosp. Healthcare Plan*, 257 F. Supp.2d 784, 789-90 (E.D. Pa. 2003) (citing Fernandez, 548 A.2d at 1193); *see also* 41 P.S. § 202 (statutory rate of interest is 6% per annum).

With respect to the rate of interest, Section 5 of the parties' Agreement states in pertinent part:

> If Buyer [Shapes] does not pay the invoice, or a party does not pay any other amounts as and when due hereunder, including a Termination Amount, by the applicable due date, then the non-paying party shall (i) pay interest on any overdue amounts *at the lesser rate of 1.5% per month or the highest rate permitted by law* until paid in full. . ."

(ECF No. 39, Ex. A)(emphasis added). Unlike other states which limit the maximum rate of prejudgment interest that parties may contractually agree to, Pennsylvania does not place a restriction on the maximum agreed upon rate. *See*, *e.g.* Ala. Code § 8-8-1 (the contractual rate is not to exceed 8% per year); Iowa Code § 535.2(1)(the contractual rate is not to exceed the rate allowed by Iowa Code § 535.2(3)); Tenn. Code Ann. § 47-14-123 (the contractual rate is not to exceed the maximums established in Tenn. Code Ann. § 47-14-123). Therefore, reading the language of the parties' agreement together with Pennsylvania law, this Court finds that the parties clearly agreed to pre-judgment interest rate of 1.5% per month, or 18% per annum. Again, Shapes does not contest this rate in its response.

Applying the rate of 1.5% per month through the date of this memorandum, February 12, 2021, Shapes is liable for accrued pre-judgment interest of $457,488.59. Consequently, Talen shall be awarded $457,488.59 pre-judgment interest. The table below breaks down the accrued interest per each unpaid invoice.

| Invoice Date | Due Date | Outstanding Balance | Aging as of 2/12/21 (in days) | Accrued Interest |
|---|---|---|---|---|
| 4/30/18 | 5/25/18 | $98,518.66 | 994 | $48,293.04 |
| 5/31/18 | 6/25/18 | $128,271.08 | 963 | $60,916.46 |
| 6/30/18 | 7/25/18 | $128,362.05 | 933 | $59,060.61 |
| 7/31/18 | 8/25/18 | $118,361.36 | 902 | $52,649.73 |
| 8/31/18 | 9/25/18 | $122,163.29 | 871 | $52,473.32 |
| 9/30/18 | 10/25/28 | $96,642.5 | 841 | $40,081.48 |
| 10/31/18 | 11/25/18 | $121,195.07 | 810 | $48,411.62 |
| 11/20/18 | 12/25/18 | $135,798.02 | 780 | $52,235.73 |

7

| Invoice Date | Due Date | Outstanding Balance | Aging as of 2/12/21 (in days) | Accrued Interest |
|---|---|---|---|---|
| 12/31/18 | 1/25/19 | $117,406.99 | 749 | $43,366.60 |
| | Total | 1066719.02 | | $457,488.59 |

### c. Post-Judgment Interest

In its final request, Talen argues that the Court should mold the judgment to include an award of post-judgment interest rate at 1.5% per month up and until the judgment is satisfied. Talen maintains that the Agreement confirms the interest rate of 1.5% per month until any debt is paid in full, and thus, this rate should continue post-judgment until the judgment is satisfied. (ECF No. 39, at 8-9.) In response, Shapes argues that the federal post-judgment interest rate should apply because the language of the agreement does not clearly, unambiguously, and unequivocally demonstrate that the parties agreed to a post-judgment interest rate that deviates from the federal statutory rate. (ECF No. 40, at 1.)

Post-judgment interest is statutorily mandated for all judgments in federal court. 28 U.S.C. § 1961; *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir.1993); *Pierce Assocs., Inc. v. The Nemours Found.*, 865 F.2d 530, 548 (3d Cir.1988). "As a general rule in federal cases where jurisdiction is based on diversity of citizenship, federal courts have held that post-judgment interest is governed by the federal post-judgment interest statute rather than by state law." *Allstate Ins. Co. v. Clymer*, 1994 WL 423875, at *2 (E.D. Pa. Aug. 11, 1994). *See also Feldman v. Philadelphia Hous. Auth.*, 1994 WL 7704, at *3 (E.D. Pa. Jan. 12, 1994)("Courts have held that in federal district court cases where jurisdiction is based on diversity of citizenship, post-judgment interest is governed by Section 1961 rather than by state law."); *ComFed Sav. Bank v. Newtown Commons Plaza Assoc.*, 719 F. Supp. 367, 377 (E.D. Pa. 1989)(same). Talen acknowledges this standard, but contends that "[n]otwithstanding the federal post-judgment interest statute, parties may contract for a differing post-judgment interest rate." (ECF No. 30-2, at 8.)

In support of this argument, Talen cites to footnote 8 in *Philadelphia Hous. Auth. v. CedarCrestone, Inc.*, 562 F. Supp. 2d 653, 659 (E.D. Pa. 2008). Talen summarizes this footnote

8

at stating "that the mandatory language of the federal post-judgment interest statute does not limit parties ability to contract for a different rate." *Id.* In this footnote, however, the court analyzes a case from the Second Circuit in which the Second Circuit, interpreting the federal post-judgment interest statute, found that the parties were free to set "their own post-judgment rates through private agreements, so long as those rates do not violate state usury and other applicable laws." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004). The *Philadelphia Hous. Auth.* court then uses this Second Circuit precedent to find that, under *Pennsylvania law*, parties may vary the state statutory interest rate by contract. *Philadelphia Hous. Auth.*, 562 F. Supp. 2d at 659 n. 8.

Unlike the Second Circuit, the Third Circuit has not addressed the issue of whether the parties may contractually agree to a post-judgment interest rate different from that set forth in § 1961, which specifies the federal statutory rate. *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 474 (M.D. Pa. 2013), *amended* (Apr. 8, 2013). In the circuits that have allowed parties to alter the federal post-judgment interest rate, they require that the parties have expressed their intent through "clear, unambiguous and unequivocal [contractual] language." *See Jack Henry & Assocs. v. BSC, Inc.*, 487 Fed. Appx. 246, 259–60 (6th Cir.2012) ("the federal rule applies unless the contract includes 'language expressing an intent that a particular interest rate apply to judgments or judgment debs' that is 'clear, unambiguous[,] and unequivocal.' ") (citing *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir.2010)); *see also Kanawha–Gauley Cola & Coke Co. v. Pittston Minerals Grp., Inc.*, 501 Fed. Appx. 247, 255 (4th Cir.2012) (applying federal interest rate in absence of "clear, unambiguous, and unequivocal language" in parties' agreement); *In re Riebesell*, 586 F.3d 782, 794–95 (10th Cir.2009).

We look to the court's analysis in *TIG Ins. Co.*, which presents an analogous set of circumstances, to determine whether Talen and Shapes clearly, unambiguously, and unequivocally intended to set the post-judgment rate at 1.5% per month. In *TIG Ins. Co.*, the contract provided that "any interest otherwise recoverable shall begin to run on the date of payment at 5% per annum (simple)." 919 F. Supp. 2d at 474. The court found that, even assuming that the Third Circuit permitted parties to contractually agree to a post-judgment interest rate different than the federal statutory rate, the parties did not demonstrate the intent necessary to do so. *Id.* "Particularly persuasive," the court explained "are the decisions of several circuit courts that have determined that a contractual provision must explicitly refer to post-

9

judgment interest in order to override § 1961." *Id. Compare Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir.2004) (applying federal rate where contractual language stated that a different interest rate would apply "from the date payment was due to the date payment is made") and *Jack Henry*, 487 Fed. Appx. at 259–60 (holding that a provision stating "[a]mounts outstanding after the due date are subject to an interest charge to day of payment" was insufficiently clear to displace the federal rate), with *Hymel v. UNC, Inc.*, 994 F.2d 260, 265–66 (5th Cir.1993) (finding contract language providing that "all past due interest and/or principal shall bear interest from maturity until paid, both before and after judgment" to be sufficiently clear).

Like the contract in *TIG Ins. Co*, the Agreement between Talen and Shapes makes no distinction between pre-judgment and post-judgment interest rates, nor does it explicitly reference post-judgment interest. Again, Section 5 of the agreement only specifies that Shapes shall "(i) pay interest on any overdue amounts at the lesser rate of 1.5% per month or the highest rate permitted by law until paid in full. . ." (ECF No. 39, Ex. A). Shapes further notes in its response that courts outside this jurisdiction, which explicitly permit parties to contractually agree to a post-judgment interest rate different from the federal statutory rate, have held that the same "until paid in full" language contained in the Agreement does not demonstrate a clear, unambiguous, and unequivocal intent to contract out of the federal interest rate. *See Jones v. Marquis Properties, LLC*, 212 F.Supp.3d 1010, 1018 (D. Colo. 2016); *Mid Atlantic Capital Corp. v. Bien*, 956 F.3d 1182, 1210 (10th Cir. 2020). For the above reasons, we find that to Talen and Shapes did not clearly, unambiguously, and unequivocally intend to set the post-judgment rate at 1.5% per month.

Therefore, Talen shall receive post-judgment interest in accordance with § 1961 which provides that:

> [I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a). For the week ending February 5, 2021, this rate was 0.06%. *See* Selected Interest Rates (Weekly)—H.15, Board of Governors of the Federal Reserve System, *available at* http://www.federalreserve.gov/releases/h15. Thus, Talen shall receive post-judgment interest on

$1,524,207.61³ at a rate of 0.06%, to be computed daily, until the judgment is paid in full, and shall be compounded annually, as provided by 28 U.S.C. § 1961(b). *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir.1986) ("post-judgment interest under 28 U.S.C. § 1961 provides for post-judgment interest and that that interest should be calculated on the amount of the district court's judgment [ ] plus prejudgment interest."); *see also Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 217 (3d Cir. 2004) (Post-judgment interest shall be awarded for the entire amount included in the judgment, including prejudgment interest.)

### III. CONCLUSION

In sum, Talen's Motion to Mold the Judgment will be granted in part and denied in part. To the extent that Talen requests attorney's fees, in total, of $31,799.50; expenses in the amount of $1,740.40; and pre-judgment interest of $457,488.59, which represents interest at the rate of 1.5% per month up to the date of this memorandum, Talen's motion is granted. However, Talen's motion will be denied to the extent that it requests the Court impose 1.5% post-judgment interest. Instead, Shapes shall be ordered to pay 0.06% post-judgment interest on $1,524,207.61, to be computed daily and compounded annually, until the judgment is paid in full pursuant to 28 U.S.C. § 1961.

An appropriate order follows.

---

³ $1,066,719.02 + $457,488.59 = $1,524,207.61